Our first case this afternoon is 4131013 Houston v. Cadigan for the appellant Stacey Lynch for the appellee Brad Elward. Please proceed. Stacey Lynch Good afternoon, Justices. My name is Stacey Lynch and I represent Brandi Houston as Administrator of the Estate of Trevante Edwards. May I reserve five minutes for rebuttal, please? Thank you, sir. Trevante Edwards, Plaintiff's decedent, was 7 years old on April 19, 2008 when he was hit by an ambulance and died as a result of the injuries he received. Plaintiff's complaint was filed in April of 2009, discovery was completed, several depositions were taken, and after four years of litigation, the case had a trial date set for November of 2013. On the eve of trial, the Supreme Court of Illinois changed the law as a result of the decision of Wilkins. For the four years the case had been litigated, Plaintiff, as Administrator of the Estate, had simple negligence allegations on file. The Supreme Court changed the law in Illinois with its decision in Wilkins. Prior to Wilkins, a private ambulance company could be liable for regular simple negligence. Plaintiff's complaint alleging negligence against the defendants survived the pleadings, discovery, and summary judgment stages of litigation with the remaining defendants until Wilkins. Until Wilkins, the Plaintiff did not need allegations of willful and wanton conduct against the defendant of private ambulance corporation. Prior to Wilkins, a private ambulance corporation was not immune from negligence. Wilkins essentially immunized private ambulance corporations from ordinary negligence. As far as I know, Wilkins is the first time the Supreme Court of Illinois has carved out an immunity for a private corporation, and that decision occurred four years after the case was filed. The first argument Plaintiff made in her opening brief was that the trial court's denial of leave to amend is contrary to Illinois law, which favors liberal amendments to pleadings. She challenged the defendant that they would not find any case law that supported their position that the trial court's denial of leave to amend on behalf of the minor beneficiaries. The defendant's response brief completely ignores Section 616, which allows for a complaint to be amended if a minor is found guilty of negligence. The defendant's response brief attempts to distinguish the Cross case, but very weakly. Defendant claims Cross is distinguishable because Cross was in a different stage of litigation and the instant case that we're here for today had a fully developed factual record and was ready for trial. But the fact that this case had survived the pleading stage and already won motion for summary judgment with the same defendants gives weight to Plaintiff's position and does not support the defendant's position. Defendant also claims that Cross is distinguishable because the grounds offered for denial of the motion to amend related to prejudice and undue delay by the plaintiff in filing the amendment. Defendant has not claimed in this case that plaintiff unduly delayed requesting leave to amend. Defendant has yet to claim that they would be prejudiced by the amendment plaintiff sought to file. And I doubt that they will stand in front of you today and claim that they are prejudiced or surprised for that matter. And, of course, the defendant has failed to meet the challenge I proposed to them in Plaintiff's opening brief to find authority. Any case that denied minor plaintiffs leave to amend. You keep on mentioning minor plaintiffs. You've done that repeatedly. This is a wrongful death action, isn't it? It is. If you were to prevail and a judgment were rendered, who would be the beneficiary of that judgment? The entire estate would. And that estate for this deceased child would be the child's mother? The administrator of the estate is the child's mother, correct? Well, is there reason to think anyone besides the child's mother or another adult would be the person benefiting from the judgment? Is there any way to think that anybody besides the mother and the beneficiary? No. Why is then, to the extent that we should be concerned, the court should be especially concerned to look out for the interests of children, how is there the interest of a child involved in this case? This is the child's estate and the person who would benefit from any judgment is an adult. Until the estate is actually distributed, when the estate is distributed, the court typically says X dollars go to the adults and Y dollars go to the other beneficiaries of the estate, whether they be minors or not. Depending on their dependency. Does this record show that there would be any beneficiaries of the estate other than the mother? A seven-year-old kid did not likely have a will. No. So the child died in the test state, it's the estate that's being brought by an administrator. If Brandy Houston were to obtain a judgment of, let's say $100,000, is there anyone besides Brandy Houston who would be the beneficiary of that? Absolutely. Who? There's the father and the heirs, the next of kin. Do we know anything about the next of kin in this case? Yes. Whether there are and what they would get? Well, what they would get we wouldn't know, but who they are, yes. In my opening brief, I lay out who they are and their ages and when the actual statute of limitations runs to each of them. Now, it's been a while since I checked, but if you die in test state, then your child doesn't the law provide that it just goes to your parents? Any benefits? Yes, but this case is unique. There were actually specific allegations filed against the parents in this case for contributory negligence. So depending on what the jury decided, it could be that the heirs, the siblings, were the only people that actually benefited if they found mom and dad liable. Well, it just seems to me to be you continue to emphasize the minor, and it seems to me to be a stretch that there's any child interest in this at all, that the interest is the estate and the administrator is the mother, and I don't know that if you were to succeed in this litigation that money would ever go to the children, and I don't think it's something that justifies your emphasis. Well, when I file a probate case in this case, a case that allowed me to file the original Sangamon County case, the siblings are mentioned, the parents are mentioned, the parents are not married. He is a separate heir. He's also been sued in this case. I believe that the rights of adults and minors are separate and distinct, and that's why, and I believe that I have a duty and the administrator has a duty to protect the rights of the minors separately, which is why I specifically asked for leave to amend on their behalf, because after Wilkins I clearly knew the parents were going to be done. So I thought in order to maintain and oblige and do my duty, I needed to do everything in my power to make sure that the minor beneficiaries can recover. Am I correct that if you die in death state and you're a child, that it's your parents who are the sole beneficiaries of the estate? I would agree with that. Well, no, I believe it's next of kin. I don't think it's just. Well, I think the next of kin, the first next of kin is your parents, not your siblings. Right. Now in this case it's a little different because the parents were actually sued, so it may be that the parents get nothing, but none of that could be determined until there's actually a jury trial with percentages of negligence determined. Okay, go ahead. But because I believe I have a duty to protect the rights of minors, I asked separately for leave to amend on their behalf. And that was an oral motion? It was. And did you, obviously since it was an oral motion, there was no proposed amended complaint presented to the court? That is correct. I indicated to the court that I just wanted to change the word negligence to willful immorality and maintain the same factual allegations, the subparagraphs, that were alleged in the original complaint. The facts did not change. Now was there a reason for that? It was just a tactical decision, Your Honor. And so the record reflects that you told the trial court that you just wanted to change, switch out the word negligence for willful and wanton? I don't know if that specifically is in the record, but that is what I indicated that I specifically wanted to file willful and wanton allegations for the minor plaintiffs. Now, no court in Illinois. Have you seen the motion for leave to file supplemental authority? I have not. Well, I won't ask what your position is because if you haven't seen it, you probably would not have a position. Okay. You may continue with your argument. Thank you, Your Honor. No court in Illinois will deny leave to amend before the statute of limitations has run. It shouldn't happen, but it happened here and this honorable court can't fix it. In addition to failing to meet the challenge I gave them, they failed to argue several of the reasons why the amendment should have been allowed, let alone prove them. The law is an amendment should be allowed when four factors are met. The first factor is to cure a defective pleading. The fact is plaintiff's complaint did not become defective until the Supreme Court's decision in Wilkins. The defendant admits that. Instead of arguing plaintiff's allegations didn't contain willful and wanton conduct, the defendant claims there is no evidence of willful and wanton conduct. This is a distraction. Abusive discretion in failing to allow an amendment is the issue, not whether there is evidence of willful and wanton conduct. This honorable court should only concern itself with the abuse of discretion and not succumb to the defendant's attempt to distract it from the real issue at hand. Notably, they don't claim changing plaintiff's negligence claims to willful and wanton claims won't cure the defective pleading. That's because it would have. Simply changing the word negligence to willful and wanton would have cured the defective pleading and the defendants do not deny that. The second factor is whether there was any prejudice or surprise. The defendant has not, to this day, claimed that they were prejudiced or surprised by the amendment. If anyone has been prejudiced, the plaintiff has been, by an abrupt change in the law after four years of litigation and by the trial court's denial of plaintiff's leave to amend. The defendants have not been prejudiced, nor will they be, if this honorable court reverses the trial court's ruling and remands the case for trial. The only real difference will be that the plaintiff has to prove that the defendant's conduct rose to the level of willful and wanton conduct and not simple negligence. That and any allegations of contributory negligence should be thrown out because the Supreme Court extinguished the claims of the parents of Tervante Edwards and only the minors can now recover. The case was ready for trial. There is no prejudice if this court allows plaintiff's leave to amend. There is also no claim they were surprised. They claim my motion was an afterthought, but notably they have not claimed that they were surprised by it. The third and final factor would be... Isn't your position to argue that there's no difference in defending a case where it's a negligence claim as opposed to defending a case where the claim is willful and wanton conduct? I would agree with that. I think the only difference would be I have to prove that the conduct rose to the level of willful and wanton and not negligence. So there's no difference in preparation for that trial as far as their focus and what they seek to ask and how they seek to defend it? I think their job gets harder because my burden gets higher. I mean, their job gets easier because my burden gets harder, is what I meant to say. I have a higher burden. I have to prove willful and wanton. Don't you have to allege facts that support willful and wanton conduct? Absolutely, you do. And I believe that the facts that have been alleged are enough. So you think those facts as alleged in your complaint were enough, if you can prove them, to support a finding of negligence as well as willful and wanton? I do, under the circumstances, yes. Number one, it was an ambulance that I believe was driving too fast for conditions. And number two, there's also evidence, there's a specific law that when you're driving an emergency vehicle like that, you're not allowed to put anything in the windshield to obstruct the view. And there is evidence in this case that there was a box of latex glove in the windshield in the exact corner of the dashboard where Trevante Edwards would have been. And I believe that, in violation of the specific statute, which prevents an emergency vehicle of having an obstructed view, is also evidence of willful and wanton conduct. So having some gloves in the windshield could be enough to prove willful and wanton conduct? Is that what you're saying? I believe it is, Judge. When there's a specific law that says an emergency vehicle can't have anything in the windshield, and there's evidence in this case that they had a box of gloves in the window, it's violation of a law. I think even if the law didn't exist, I think it would be evidence of willful and wanton. But I think the fact that it's a violation of a specific law, I think it's even more evidence of willful and wanton. Where was the ambulance going?  To the spaghetti shop here in town, Inspector. So it wasn't doing some non-emergency medical delivery of any kind? No, they were just going to eat. The third and final factor, which overlaps, I think, with the fourth factor of timeliness, is whether an amendment should be allowed, whether a party had a previous opportunity to amend. The defendant has not claimed that the plaintiff was not dilatory in the prosecution of this action, or that she should have requested leave to amend earlier, nor can they really hear. Plaintiff's complaint survived four years of litigation. Only due to the change in law in Wilkins, plaintiff's pleading became defective, and plaintiff knew the trial court would dismiss the case with respect to the adults. There was no need to ask for leave to amend earlier, and no one is claiming plaintiff had a previous opportunity to amend, and she sat on her laurels. They claim plaintiff had ample opportunity to amend her complaint to add willful and wanton allegations had the facts been present. Again, the issue is not whether there's evidence of willful and wanton conduct, although it's plaintiff's contention that there is evidence in this case that it was not an issue decided by the trial court, nor is it an issue on appeal. Plaintiff would appreciate her right to a jury to decide whether the defendant's conduct of driving an ambulance so fast that it can't avoid striking and killing a boy rises to the level of willful and wanton conduct. It doesn't make any sense that the plaintiff would have or even should have pled willful and wanton conduct instead of negligence until the law changed. Negligence is much easier to prove than willful and wanton conduct. Frankly, defendant's position that plaintiff should have requested leave to amend earlier is disingenuous and basically means they're saying I should have committed malpractice and or I should have had a crystal ball in foreseeing Wilkins. I should have known the Illinois Supreme Court was going to carve out an immunity for private ambulance companies for the first time in its history. This honorable court can see plaintiff was dilatory in the prosecution of her case and there was no need to request leave to amend any earlier than she did. In conclusion, on the first argument the plaintiff made, defendants have failed to show. Why couldn't you request leave to amend as soon as the Supreme Court decision was made public? Well, I didn't know about it right away. I mean, I made the slips, but I'm not that good. And I didn't know about it until they filed their motion for summary judgment. And then I decided what am I going to do? And my creativity led me to believe that the only way that I could get these people's claims to survive was through the minors because there was no other way to distinguish Wilkins. That was what I did. They've also failed to present the court with any case law that the minor beneficiaries were rightfully denied their day in court. The second argument plaintiff made in her opening brief is that the administrator should have been allowed leave to amend on behalf of the minor beneficiaries of the state because the statute of limitations has not run as to their claims. I believe special consideration should always be given to minor children. Defendants claim that permitting plaintiff leave to amend would create perpetual litigation is not accurate. The statute of limitations is the statute of limitations. It's different for minors because the legislator has carved out special protections for minors. Is there a case law that stands for the proposition that if there may be minor beneficiaries of a mistake that the normal statute of limitations rules governing when a mistake may bring an action don't apply? Not that I'm aware of, Your Honor. Isn't that essentially your argument here? It is essentially my argument. Would we be the first court to so hold? I believe in Illinois you would. And that's in the event, as we discussed earlier, that the minors are ever going to be beneficiaries under any of this litigation in any of them. Hardly. It seems that I guess only if the parents of the deceased are held liable in some sense would that ever even happen. Isn't that right? Right. And I don't know whether that would ever happen or not. Why should it happen? Why should the parents be held liable? What is the claim against the parents? Negligent supervision. The father was actually in custody of the boy that night. The mother was not. The mother gave the child to the father for the evening to visit and he never comes home. So that's the negligent supervision of the mother's part, depriving her of collecting as the heir under the intestate statute? It is. And then against the father, also negligent supervision as well. Okay, counsel, now you are out of time. Thank you very much, Your Honor. Mr. Elwood. Thank you, Your Honor. Counsel, before you begin, do you have an extra copy of your motion for leave to file supplemental authority? I do. I would ask that you do that. I do note from your certificate of service that that was mailed out on July 30th, which was a Thursday. And so it's doubtful that counsel would have received that. I apologize about that. I guess I would have assumed with our mail that we would have had a document from Peoria to Bloomington in a day if not two. So I apologize for that. A better practice, Mr. Elwood, would have been to have faxed it as well. You're right. Absolutely would have. You're right. Go ahead. Absolutely. On behalf of Peter Catt, I get to medics first. It's our position that the circuit court did make the right decision in denying the opportunity to leave here. This is not an abuse of discretion. I think there are two points that we'd like to stress with this court. One focuses, I'll just mention them briefly and then talk about them in more detail. The first relates to the amendment itself. And it's our position that the plaintiff failed to tender an amended complaint in this case. And when we consider what her proposed amendment, as she states it in her reply, is really asking for, I think the law is well settled. Counsel, let me ask you. Yes. What was the representation made to the court as far as the nature of the amendment that was being requested? I was not at that hearing. There's no transcript available for that. And the order itself does not state anything of that regard. But I'm willing to say if we assume what counsel says is accurate, that even that is not enough. The representation to the court that all we have to do is replace negligent with willful and wanton just does not cut the standard that we need to. And the supplemental authority goes to that issue. Yes. And I'm careful not to walk down that line since it didn't get received. But yes, it does go to that point. Counsel makes a comment that we didn't address 216 in our brief. And I think we did from the standpoint of we talked about the Loyola Academy case, which sets forth what the standards are when you're evaluating. Under that statute? Pardon me? Under that statute? Yes. It evaluates what the factors are when you consider whether a court abuses discretion in denying an opportunity to leave. And it does focus, as counsel said, on four factors. Does the proposed amendment cure the defective pleading? It focuses on the prejudice, timeliness, and the previous opportunity to amend. The interesting thing is the case says that a plaintiff must meet all four of the Loyola Academy factors. And so here what we did is we focused on the simple fact, does this proposed amended complaint cure the defective pleading? And as counsel indicates, the defective pleading here was a negligence claim in a situation where the court has ruled that you can't plead negligence against an ambulance company in this situation and that the only avenue is Wolfhorn One. And so the question then becomes, has the attempted, purported amendment cured that? And so I think the first step, and we point this out in our brief, and counsel really doesn't address this very closely in her reply, but the case law, Loftus, Knox College, Lowry, all talks about leave to amend will not be considered an abuse of discretion where the movement does not present the proposed amendment or specific indication of the contents. Now, obviously we don't have a written document to focus on. So we have to rely on what she's telling us as far as what was presented. And again, without trading carefully on our supplemental, I think I'll leave that argument for the way we phrased it in our motion to supplement the cases. Simply calling the activities here, Wolfhorn One, when they've been pled throughout the entire case as negligence, does not cure the defect. Because the crux of Wolfhorn One is an elevated state of intent. And I think that's what's missing. And Your Honor made a comment about the allegations. When we look at Wolfhorn One, we look at counsel's brief, she cites the IPI 14.01. It talks about how a court will define Wolfhorn One to a jury. And when we look at the complaint allegations and we just substitute the Wolfhorn One words in for negligence as she's contending. Yeah, but she claims that she made your job easier. It's easier to defend in the present posture of Wolfhorn One than it would have been in negligence. Therefore, you suffered no prejudice. What's wrong with that argument? To me, it seems to have some merit. No, I don't think that's the case at all. First of all, I think the prejudice is the fact that this case continues for four years and there are no allegations whatsoever of Wolfhorn One. And I say that's important for these reasons. I can guarantee you if there were evidence and there were facts that would give rise to allegations of Wolfhorn One, they would have been made. Regardless of the fact that it is a higher burden for counsel. My point is you were prepared to defend against facts that established negligence. Yes. Well, wouldn't that have put you in a position that you could have even more easily defended against facts which would purport to establish negligence? If all we have is allegations of negligence and that's what the conduct turns out, certainly we present that and we do have an easier burden. If all you have is what? You're right. You're right. Versus Wolfhorn One. I would say that we don't need all four factors. And if you want to say is there really prejudice here? I think there's prejudice changing the horse halfway through the game. But if you want to say that. Let me follow up on Justice Sterner's question with the question I asked Ms. Lynch. And that is on the issue of surprise and a potential prejudice, how would this have changed your preparation? This was four years and you're ready for trial. In getting ready for trial if you had known earlier that this was a Wolfhorn One case. She says it's easier for you because now her burden is higher. Is there any other aspect of that that you want to comment on? I don't think so. I think from the standpoint of we're going to defend that case by putting evidence that most all our activity was negligence. But I don't think we need to establish all four of the factors that were set forth in Loyola Academy. And that was one of the reasons that we focused on whether or not these amendments or proposed amendments would actually cure the defect. One thing I think we need to remember here is that this is a case that was if you take her assumption that I just told the judge we needed to add Wolfhorn One. And present that to this trial judge who was deciding this case. This judge had lived with this case and was the same judge that decided the summary judgment motion. He understood the evidence. He knew what the depositions were going to be. He knew what the testimony was going to be. And in the face of that, knowing what the evidence were, counsel says we don't need any more evidence in the case. We don't need any more depositions. Everything's ready to go. If that's the case, where are the allegations? Well, the trial judge looked at that and made the decision that there are no evidence here. There's no facts here that would support the allegations of Wolfhorn One. And I think we have to remember that when we look at whether or not there was an abuse of discretion. Now, whether or not we have to establish all four factors, we didn't address the prejudice aspect in our brief. And I don't think that's prejudicial to our position. I think we can establish the others. On the timeliness factor, I think we have that from the standpoint. If these facts were so embedded in this case, where were the allegations beforehand? They're not there. Now, if you'll notice, when the complaint was originally drafted and the city was involved, there were Wolfhorn One allegations in that, so they knew what they were at that point. But they can't draft them based on the facts. If she's saying the facts are in this case, we don't need any more evidence, we don't need any more depths, she's saying the facts are all packaged up and ready to go on Wolfhorn One. She's saying it's not there. When the Supreme Court came out with the decision, she didn't need to allege Wolfhorn One because it wasn't necessary in order for her to make a recovery for her client. She only needed to allege negligence. Therefore, it made no sense for her. Well, it would also open up the possibility of any type of punitive damages as well. And so there is an avenue for that. Granted, on her negligence claim, it would not impact that. You're right. So when we look at this case, we see a trial judge that has knowledge of all the evidence as it's going to come in. And the trial judge, after hearing the arguments at the summary judgment, understands that the real dispute is how fast was this vehicle going. We've got a witness whose credibility was all over the place. He says, I think it was moving fast. And then he says, well, I really don't know what the speed limit was. I really don't know how fast this car was going. And we've got other witnesses who says we were under the speed limit. Now, that creates a question of fact, obviously. But does that evidence, that dispute alone, does that rise to the level of establishing facts sufficient to plead willful and wanton? I don't think it does. There has to be some aspect of intent. And when we look at the difference between a negligence case as it's pled and a willful and wanton case, the courts say that the distinction between those is generally found in the differing allegations as to the state of the mind of the defendant at the time of the breach. And that's where I was going a few minutes ago. When we look at the willful and wanton jury instruction, I don't think either of us are talking about this case involving an intentional willful and wanton tort. But the question is, where is the allegation? Where are the facts that would support the conclusion or an allegation of an utter indifference or conscious disregard for the safety of another? That is missing. That aspect is missing. So when we look at the complaint as she's got it dressed up, the negligence allegations with the willful and wanton preface, and we say, where are those allegations? Is anything that would allow us from the facts to draw a conclusion that there's an utter indifference to or conscious disregard for another's safety? It's not there. Is it your position, then, that assuming this complaint had been brought initially, alleging willful and wanton misconduct, with no more facts than are set forth now, that the trial court, you would have sought, the trial court would have properly granted a motion to dismiss amendment 2615 for the state of cause of action? Yes. And that we, on appeal, should concur? I would hope that you would, yes. Because it's insufficient allegation of facts to support these claims? Yes, absolutely. You heard Ms. Lynn say, well, you know, jury question, and there's a box of gloves and a windshield, et cetera. Again, without the necessary allegations that there is some status of intent involved, something that would allow a conclusion or an inference of an utter indifference or a conscious disregard, there's nothing to allege that. You can't just allege a difference in opinion between two witnesses about a fact and say, well, because there's a difference in opinion, there's willful and wanton evidence as well. There has to be something to rise to that next level. The ambulance was speeding. Pardon me? Do you have any reference to that, too? Pardon me? The ambulance was speeding. That was an allegation that, according to the witness. That's not enough? I don't think that is enough. No, I don't. You have a disagreement between the witnesses about how fast the gentleman was going. That doesn't rise to the level of willful and wanton. Was there any discussion at the trial level by you or by the trial court regarding the sufficiency? Leaving aside, I suppose, the Loyola factor, one of the questions is, is this going to be a sufficient complaint if permitted? Was there discussion about the sufficiency of that? That I don't know. The record does not reflect that.  Mr. Roberts, your position that the trial judge would have been appropriate to have denied leave to amend the complaint because the complaint as proposed, just substituting these words, didn't say the cause of action. Yes, and I think if we look at the Village of Gulfport case that we talked about in our brief, the court says, it's not necessary for the parties to go through the process of amending a pleading and testing its sufficiency by a motion to dismiss when ruling on the motion to amend a court may consider the ultimate efficacy of the claim as stated in the proposed amendment pleading. So if you're going to say it's stated in her comments that were made to the court, the court had the ability to look at it at that stage and say, I just don't see it, and not allow it to be filed and allow it to be motioned and allow us to move to the level that you were talking about. The issue before this court is whether the trial court abused its discretion. Yes. In resolving that issue, is it important for us to hear what the trial court said in denying the motion to amend? I don't think it necessarily, I don't think it's fatal. I think that the court can look at the context of how this was decided and look at the first factor. I still stand by the proposition that there are cases out there that say when you don't propose an amended complaint that the court can review. I mean, we're going on representation. Say that again. I stand by our proposition that the law provides it when a trial judge denies an opportunity to amend and there's been no proposed amended complaint, that the court can say that that's sufficient to say there was no abuse of discretion. Now, here what we're doing is, what we're really saying is, well, without that proposed amended complaint, without really anything like a court transcript that would allow us to have any, we're going to go on representation of counsel that this is what was made. I'm not sure that the court really would want to go in that direction, but all I'm saying is even if you are going to look at her representations and say, this is how she's going to dress up the complaint if it were amended, I'm saying that that doesn't even pass the standards according to the cases that we've cited. So, first of all, I don't think we even need to get to the point of looking at what the supposed allegations would be as she states in a reply brief. I think we can say, you didn't offer a proposed amended complaint. And I make a comment in my briefing, counsel was kind of critical about it in the reply brief, but as the court pointed out, the decision comes out. We file the renewed motion for summary judgment. We get no response. We get nothing responding that says, OK, we concede the motion, but we also offer a proposed amended complaint, and here it is for the court to review. We have the hearing. We have comments. We have the oral comments made. There's no motion to reconsider saying, well, this is what we were proposing. We don't have any of that taking place here for the trial court to look at or for this court to review. And I'd hate to see us make an exception that would allow us to come up at the appellate court and say, well, this is what I really meant to say, and this is what I said, when we don't have a transcript or anything to document that. So I think that's a serious problem for this case and for them to overcome. And I wish I would have faxed that to counsel so that we could discuss the other aspect, because I think that's an important part of this case as well. There's one thing I'd like to touch upon real briefly before I close, and it has to do with all the comments that were made about this case involving minors and the rights of minors. I'm not trying to be cold. What I'm saying in this case is it doesn't matter if there's one minor or 1,000 minors in this case. The question is, does this estate of this decedent have a cause of action? The cases that counsel cited, we didn't respond to some of them because, frankly, they don't apply. They don't apply at all because they were looking at, is something told? Do they have a right to file something at a later date because they're minors? There's a claim filed here. There's a claim on file here. And for the purposes of argument, allow them to add all the kids. So what? The question still comes back to the fact, is the proposed amendment as offered, does it state a claim for willful and wanton conduct? So it doesn't matter how many kids are attached to it, how many minors, or whether we consider these claims that she's talking about. There's a claim on file by the estate. If the estate has the ability to pursue the claim but to recover for the liability, then it can worry about the beneficiary's own. They're different questions. And it shouldn't come into the mix here in this situation. So, again, I'm not trying to sound cold. I'm just trying to say that the real question here, regardless of how she's dressed it up, is, is this proposed amendment a viable one? And it's not, for the reasons that we said earlier. So with that said, thank you. Thank you. Any rebuttal? Yes, please. Thank you. Before you start, with regard to this motion for the file supplemental authority, you have not received a copy of it, correct? Correct. But I did just have a chance to review it. Okay. And would you like any additional time to respond to it? I would not. I would just like to respond orally to that. Very well. With respect to the motion for leave to file supplemental authority, initially I don't believe I raised any new issues in my reply brief that would warrant this. And the only case that they cite that is actually binding and precedential on this case is from 1961. My guess is that's before the IPI defining willful and wanton conduct was instituted and is not actually binding precedent under these circumstances so many years later, where clearly what the law is on willful and wanton has been laid out in the IPI. Now, Planoff is simply asking this court to recognize, as the administrator in this case did, that the beneficiaries and the rights of the minors are separate and distinct. The rights of minors have been carved out distinctly in the law with multiple statute of limitations that apply solely to them. The legislature and case law in Illinois clearly suggests minors are to be protected and gives them separate statute of limitations that have not run in this case. The court has a duty, I believe, to protect the rights of minors above all others, and the trial court failed to recognize the rights of the minors and protect the minor beneficiaries of this state. Planoff cites DeLuna with respect to the statute of limitations, and there is no risk of perpetual limitation. Planoff is not asking the court to toll or extend the statute of limitations for minors under the Wrongful Death Act or the Survival Act. The legislature has set the statute at 20 years in order to protect them. The defendant fails to mention DeLuna, doesn't distinguish DeLuna from the instant case, and they give this court no good reason to go against DeLuna. Their only response to the public policy argument is don't be sympathetic to minors. Planoff is trying to evoke your sympathy and get you to depart from established law. If that's what I was really trying to do, you would have seen pictures of this 7-year-old boy, his siblings, his bicycle, the damage to the ambulance, everything. Planoff focused on the law. The defendant ignored much of what Planoff argued, which is the law on why her amendment should have been allowed, and their claim that my plea for special treatment for minors should fall on deaf ears is laughable. When the courts no longer go out of their way to protect minors or those under a disability, that will be a sad day in Illinois. They are asking you to go against a long established history of protecting minors in this state and let Planoff's arguments fall on deaf ears. Planoff is not. The minor's rights were protected by the Planoff's original complaint until the Supreme Court did an about-face. The mother had to waive her claims in order to fill her duty as administrator of the estate and put the minor's claims more important and took priority over her own. Planoff is not asking for a separate count for the minors. It is Planoff's contention that the trial court's ruling was unreasonable and no reasonable jurist would deprive minors from their day in court, especially in a situation where the statute of limitations has not yet run. The trial court abused its discretion when it failed to allow the administrator to amend the negligence allegations to willful and wanton allegations on behalf of the minors whose statutes it had not yet run. And because of the abuse of discretion Planoff respectfully requests this honorable court reverse his decision and allow Planoff to go to trial. Thank you. All right. Thanks to both of you. The case is submitted and the court stands at recess.